## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **LIFE EXTENSION FOUNDATION, INC.,** | ) ) ) |  |
|  | ) |  |
| **Plaintiff,** | ) ) | **Civil Case No. 12-280 (RJL)** |
| **v.** | ) ) |  |
| **INTERNAL REVENUE SERVICE.** | ) ) | **FILED** |
| **Defendant.** | ) ) ) | JAN 1 6 2013 |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### MEMORANDUM OPINION
(January /6, 2013) [#11, #14]

Plaintiff Life Extension Foundation ("Foundation" or "plaintiff") brings this action against the Internal Revenue Service ("the IRS" or "defendant") for failure to disclose information pursuant to the Freedom of Information Act ("FOIA"). Plaintiff seeks certain documents from an examination file composed by the IRS's Tax Exempt and Government Entities Examination Division pursuant to a recent audit of the plaintiff. Before the Court are the parties' cross-motions for summary judgment. Upon consideration of the parties' pleadings, relevant law, and the entire record herein, the defendant's motion is GRANTED and the plaintiff's cross-motion is DENIED.

### BACKGROUND

Plaintiff is a public charitable organization, recognized under 26 U.S.C. § 501(c)(3), that supports and furthers scientific research. Compl. ¶ 4, ECF No. 1. On July 21, 2011, plaintiff submitted a FOIA request to the IRS for "the examination file with

1

regard to the recent examination conducted by agents from the Tax Exempt and

Government Entities Examination Division in Independence, MO for taxable years 2006,

2007, and 2008." *Id.* ¶ 7.  In its request, the Foundation specifically excluded "copies of

documents submitted by the [plaintiff]" and "documents previously provided by the IRS

agent to the [plaintiff]" from its FOIA inquiry. *Id.*, Ex. 1 at 1.

After multiple requests for an extension of the response date, the IRS responded to

the Foundation's FOIA request on November 10, 2011. *Id.* ¶¶ 8, 11-13.  In its letter, the

IRS stated that although it had identified 329 pages that were responsive to the

Foundation's FOIA request, it was only providing the charitable organization with 232 of

those pages, and withholding 8 pages in part and 97 pages in full under FOIA exemptions

5 U.S.C. § 552(b)(3) ("Exemption 3"), 5 U.S.C. § 552(b)(5) ("Exemption 5") and 5

U.S.C. § 552(b)(7)(D) ("Exemption 7D"). *Id.* ¶ 14.  On December 8, 2011, plaintiff

formally appealed the IRS's decision to the office of IRS Appeals. *Id.* ¶ 16.  When the

Foundation's appeal was denied on January 20, 2012, the IRS asserted additional FOIA

exemptions under Exemption 3, in conjunction with 26 U.S.C. § 6103(b)(2) and 5 U.S.C.

§ 552(b)(7)(E) ("Exemption 7E"), to withhold the requested documents. *Id.* ¶ 17.

One month later, on February 17, 2012, plaintiff filed a complaint in this Court,

seeking an order to compel disclosure of the requested 97 pages of withheld records in

their entireties, as well as an order to conduct another search for additional responsive

records. *See generally id.*  Although the IRS filed a partial motion to dismiss on April 27,

2012, the parties entered into a Consent Order resolving that motion on May 25, 2012.

*See* Def.'s Partial Mot. to Dismiss, ECF No. 5; Consent Order, ECF No. 8.  In that Order,

2

the plaintiff's requests for an IRS search for additional responsive records and for "expeditious proceedings" were dismissed without prejudice.  *Id.* at 1.

On July 16, 2012, the IRS moved for summary judgment, contending that it properly withheld the records at issue under exemptions to FOIA.  *See* Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 1, ECF No. 11.  The IRS supported its motion with two affidavits, one from an IRS Disclosure Specialist responsible for FOIA requests and the other from an attorney in the IRS's Office of Chief Counsel.  *See* Decl. of Stephen Danish ("Danish Decl."), ECF No. 11-4; Decl. of Carlton W. King ("King Decl."), ECF No. 11-3.  The IRS also submitted additional declarations, *in camera*, in support of its Motion for Summary Judgment.  *See* Def.'s Notice of *In Camera* Submission ("Def.'s *In Camera* Sub."), ECF No. 12.  On August 16, 2012, plaintiff also moved for summary judgment, asserting that the IRS is not entitled to summary judgment because it has not provided sufficient information about the withheld documents to carry its burden under FOIA.  Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot. for Summ. J. and *In Camera* Review of Withheld Documents ("Pl.'s Mem.") at 1, ECF No. 13-1.  For the reasons set forth below, I disagree and GRANT summary judgment in favor of the defendant.

## ANALYSIS

### I.    Summary Judgment in a FOIA Case

Both parties have moved for summary judgment.  FOIA cases, of course, are "typically and appropriately" decided on motions for summary judgment.  *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  Indeed, "[w]hen

assessing a motion for summary judgment under FOIA, the Court shall determine the matter *de novo.*" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009) (citing 5 U.S.C. § 552(a)(4)(B)).

Summary judgment is appropriate when the record demonstrates that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). With respect to an agency's non-disclosure decisions in a FOIA action, the court may rely on affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (affidavits and declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents") (internal quotation marks and citation omitted).

"Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)). In assessing the logic and plausibility of an agency assertion of an exemption, "reviewing courts [should] respect the expertise of an agency" and avoid "overstep[ping] the proper limits of the judicial role in FOIA review." *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979); *see also Military Audit Project*, 656 F.2d at 753; *Halperin v. CIA*, 629 F.2d 144,

148 & n.20 (D.C. Cir. 1980).

## II.    The IRS's Withholding and Release of Non-Responsive and Responsive Pages

In its complaint, the plaintiff requests that this Court order the IRS to release the 97 pages of records from the examination file that were withheld in full in 2011. *See generally* Compl. However, due to a calculation error and the release of some previously-withheld documents, the number of responsive pages that the IRS continues to withhold in full under FOIA, and are at issue in this case, is 67 pages of records.

More specifically, of the initial 329 page total that the IRS indicated was responsive to plaintiff's FOIA request, only 306 had indeed been found responsive by Stephen Danish ("Danish"), an IRS Disclosure Specialist responsible for FOIA requests. *See* King Decl. ¶ 9; Danish Decl. ¶ 6. Danish inadvertently counted 23 non-responsive documents in the 329 page total, but did not provide such documents to the plaintiff because they fell outside of the terms of plaintiff's request. *Id.* The IRS has now determined that, of the 329 pages initially identified by Danish as responsive to plaintiff's FOIA request, in fact only 307 pages are responsive, as 22 pages fall outside the scope of plaintiff's request.[1]   King Decl. ¶ 11. Accordingly, on November 10, 2011, when the IRS released 232 pages to the plaintiff pursuant to the latter's FOIA request, the agency only

---

[1] More specifically, pages 113 and 156 are blank pages, pages 223 through 233 and 235 through 242 consist of forms provided to the IRS by the plaintiff, and pages 15 and 16 were redacted, and page 18 not released, because they contain information related to years other than those requested by the plaintiff. *See* King Decl. ¶ 11.

withheld 75 responsive pages in full, rather than 97.[2]

In addition, during the course of litigation, the IRS has released 8 additional pages, in full, that were previously withheld from the plaintiff.[3] King Decl. ¶ 12. As such, the IRS has released, in full or in part, a total of 240 pages, and continues to withhold 67 responsive pages in full from the plaintiff pursuant to relevant exemptions to FOIA.

## III.   Exemptions Claimed by the IRS

The IRS contends that the withheld documents are exempt from disclosure under FOIA Exemptions 3, 5, and 7(D). Def.'s Brief in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 8-9, ECF No. 11-1. The plaintiff challenges these claimed exemptions, asserting that the IRS has failed to provide sufficient information regarding their

---

[2] Plaintiff disputes the IRS's determination that these 22 pages were "outside the scope" of its FOIA request. See Pl.'s Mem. at 10. Basing its contention of erroneous classification on the fact that the IRS determined, after litigation had commenced, that one of the 22 non-responsive pages was in fact responsive, the plaintiff requests that the court conduct an *in camera* inspection of the materials to ensure that the IRS's designations are indeed correct. *Id.* "Agency affidavits are accorded a presumption of good faith," however, and the IRS's declarations explicitly detail how the IRS made its responsiveness determination. *SafeCard Servs.*, 926 F.2d at 1200; see Danish Decl. ¶ 6 ("My review indicated that 23 of the pages initially thought to be responsive were, in fact, outside the scope of [p]laintiff's request. These consisted of material provided to the [IRS] by [p]laintiff, such as Forms 2848, Power of Attorney and Declaration of Representative, and Forms 8821, Tax Information Authorization, which [p]laintiff had . . . expressly excluded from the scope of its FOIA request."); King Decl. ¶ 11 ("Of the initial total of 329 pages, the [IRS] now has determined that twenty-two pages were not responsive, as they fall outside of the terms of [p]laintiff's request. Pages 113 and 156 are blank pages. Pages 223 through 233 and 235 through 242 consist of forms provided to the [IRS] by [p]laintiff . . . . Pages 015 and 016 were redacted, and page 018 not released, because they contain information related to years other than those requested by [p]laintiff."). The plaintiff, on the other hand, has no evidence to support its bald allegation of government misconduct or bad faith.

[3] Page 234, previously deemed nonresponsive, and pages 73 to 79, previously withheld pursuant to a FOIA exemption, have been released in their entirety to plaintiff. King Decl. ¶ 12.

applicability to the withheld documents and that this court should review the withheld documents *in camera* to determine whether the IRS's representations are truthful and the documents indeed qualify for exemption.[4]   Pl.'s Mem. at 7-8, 10, 12, 16.   For the following reasons, I agree with the IRS and grant its motion for summary judgment.

### A. FOIA Exemption 3

Exemption 3 permits an agency to prevent the release of records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).   In determining the applicability of Exemption 3, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978); *see Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993); *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).

Under Exemption 3, the IRS seeks to withhold 4 pages (pgs. 150 to 153), in full, pursuant to 26 U.S.C. § 6103(a).   King Decl. ¶ 13(b).   This statute provides that tax "[r]eturns and return information shall be confidential," and "no officer or employee of the United States . . . shall disclose any [tax] return or return information obtained by him in any manner in connection with his service." 26 U.S.C. § 6103(a); *see Tax Analysts v. IRS*, 410 F.3d 715, 718 (D.C. Cir. 2005) ("Tax returns and return information remain confidential except where provided to the contrary.").   "Return information" is defined

---

[4] Although the plaintiff, in its briefing on this motion, disputes the IRS's partial release of 8 pages pursuant to FOIA exemptions, it does not seek the release of these partially withheld documents in the Complaint.   As such, the Court will not address the plaintiff's arguments with regard to the partially-withheld pages.

broadly by the statute to include almost any information compiled by the IRS in connection with its determination of a taxpayer's liability for tax, interest, penalties, or civil or criminal offenses. 26 U.S.C. § 6103(b)(2)(A).

Carlton King, an attorney in the IRS's Office of Chief Counsel, attests that the 4 pages withheld by the IRS "consist of parts of the actual returns of taxpayers other than [p]laintiff," and that "none of the provisions of the Code authorize the release of this information to plaintiff."[5]   King Decl. ¶ 13(b).  Because this information is precisely the type of material prohibited from disclosure by 26 U.S.C. § 6103(a), the IRS is entitled to summary judgment on its withholding of pages 150 to 153, in full, under Exemption 3.[6]

## B. FOIA Exemption 5

FOIA Exemption 5 protects from disclosure inter-agency or intra-agency letters or memoranda "which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  To qualify for this exemption, a document "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water*

---

[5] Although the IRS initially withheld 11 pages, in full, as containing tax return information of taxpayers other than the plaintiff, it released 7 of those pages (pgs. 73 to 79) when it determined that they only consisted of the results of Internet searches that returned results relating to taxpayers other than plaintiff. King Decl. ¶ 13(a).

[6] It is well-established in our Circuit that a district court may award summary judgment to a government agency based solely on information presented in affidavits or declarations, so long as the agency's submissions set forth a "relatively detailed justification for invoking an exemption to disclosure; specifically identify the reasons why a particular exemption is relevant; and correlate those claims with those records (or portions thereof) to which they apply." *Schoenman v. FBI*, 763 F. Supp. 2d 173, 188 (D.D.C. 2011) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145 (D.C. Cir. 2006)) (internal quotation marks omitted).

*Users Protective Ass'n*, 532 U.S. 1, 8 (2001).   Courts have incorporated civil discovery

privileges into this exemption, such as attorney work-product, attorney-client privilege,

and "deliberative process" privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132,

148-49 (1975); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 862 (D.C. Cir. 1980).

Here, the IRS asserts both the deliberative process privilege and the attorney-client

privilege as the basis for withholding the same 52 pages, in full, from the plaintiff.  Def.'s

Mem. at 12-19; King Decl. ¶¶ 14-16.   These privileges, and their applicability to the 52

withheld pages, will be discussed in turn.

## 1.  Deliberative Process Privilege

The deliberative process privilege exempts from disclosure those documents that

contain deliberations comprising part of a process by which governmental decisions and

policies are made. *Klamath Water Users*, 532 U.S. at 8.  Accordingly, government

materials that are both "predecisional" and "deliberative" are shielded by the privilege.

*Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997); *see also Vaughn v. Rosen*, 523

F.2d 1136, 1143-44 (D.C. Cir. 1975) (noting that a document is "deliberative" if it

"makes recommendations or expresses opinions on legal or policy matters"); *Petroleum

Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) ("A document

is predecisional if it was prepared in order to assist an agency decisionmaker in arriving

at his decision, rather than to support a decision already made.") (internal quotation

marks omitted).  "[T]he ultimate purpose of this long-recognized [deliberative process]

privilege is to prevent injury to the quality of agency decisions" as well as to encourage

"the frank discussion of legal and policy issues" by ensuring that agencies are not "forced

to operate in a fishbowl." *Sears,* 421 U.S. at 151; *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc).

In this case, the IRS withholds 52 responsive pages, in full, under the deliberative process privilege because these records "contain opinions, analyses, advice, thought processes, strategies, and recommendations generated during the course of the IRS's consideration of the appropriate course of action to take regarding the examination of [p]laintiff['s] [tax exempt status]." King Decl. ¶ 15. In his declaration, King explains that the withheld 52 pages are composed of two documents: (1) a 45-page Routing and Transmittal Slip, from attorney for IRS's Tax Exempt and Government Entities office ("TEGE") Donna Mayfield Palmer to IRS Agent James Brophy, which is attached to a draft of a Form 886A, Explanation of Items (pgs. 285 to 329); and (2) a 7-page memorandum of legal advice from Acting Gulf Area Counsel for TEGE Mark L. Hulse to Brophy (pgs. 278 to 284). King Decl. ¶¶ 14(a)-(b). King asserts that the Form 886A was composed in draft by the IRS, contains extensive edits and comments that reflect opinions and advice from IRS's Office of Chief Counsel to the IRS, and was created to evaluate whether the plaintiff was operating exclusively for exempt purposes. *Id.* ¶¶ 14(b), 16. In addition, the 7-page memorandum, King explains, is "explicit legal advice" from Counsel for TEGE to its client, the IRS, and discusses potential action regarding the plaintiff and its tax exempt status. *Id.* ¶¶ 14(a), 16. As such, the disclosure of these materials "would expose the decision making processes of the IRS, including [the Office of Chief] Counsel, in such a way that it might discourage candid discussion within the

IRS or with the Department of the Treasury and undermine their ability to perform their responsibilities and duties." *Id.* ¶ 15.

It is apparent that both the 45-page marked-up Form 886A and 7-page memorandum are predecisional and deliberative in nature, and thus subject to the deliberative process privilege. Both documents, as clearly and sufficiently described in King's declaration, despite plaintiff's arguments to the contrary, contain inter-agency material that was generated as part of a continuous process of agency decision-making, namely what determination the IRS should make with regard to plaintiff's tax-exempt status. *Id.* The King declaration explains that both materials contain "personal opinions, analyses, thought processes, strategies, and recommendations of the writers concerning the proposed revocation of [p]laintiff's tax-exempt status," before any final determination was made, including "discussions of [p]laintiff's activities, publicity materials, fee structure for members, and its relationship with affiliate entities." *Id.* ("These materials reflect 'the give and take' of the agency's consultative, deliberative processes."). In addition, the King declaration clearly explains the reasons why disclosure would harm the decision-making process. *Id.* The law of our Circuit is clear that under such circumstances, the draft Form 886A and legal memorandum are appropriately exempt from disclosure pursuant to Exemption (b)(5).[7] *See also Military Audit Project*, 656 F.2d

---

[7] *See, e.g.*, *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) ("There can be no doubt that . . . legal advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale . . . ."); *Coastal States*, 617 F.2d at 868 (recognizing that a "series of memoranda to the Assistant Secretary of the Army from the General Counsel . . . recommending legal strategy" is a "classic case of the deliberative process at work");

at 738 (summary judgment on basis of agency affidavits is warranted if they "describe the

documents and the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption,

and are not controverted by either contrary evidence in the record nor by evidence of

agency bad faith."). Accordingly, I uphold the IRS's assertion of the 7-page

memorandum and 45-page draft Form 886A as subject to the deliberative process

privilege and therefore exempt from disclosure under Exemption 3.

Plaintiff argues that "[t]here is no discussion of segregability" on the part of the

IRS as to the marked-up Form 886A and legal memorandum, observing that these

documents would normally be expected to have a separate fact section that would not be

protected under the deliberative process privilege. *See* Pl.'s Mem. at 14; Pl.'s Reply Br.

in Supp. of Pl.'s Cross-Mot. for Summ. J. and *In Camera* Review of Withheld

---

*FPL Group, Inc. v. IRS*, 698 F. Supp. 66, 83-84 (D.D.C. 2010) (deliberative process privilege applies to draft memoranda and email discussions reflecting relevant revisions and recommendations of IRS's Office of Chief Counsel attorneys, who were involved in drafting final written determination on tax issue); *Morley v. CIA*, 699 F. Supp. 2d 244, 255 (D.D.C. 2010) (records concerning pre-decisional deliberations, which preceded ultimate agency action granting security clearance, were exempt from disclosure); *Mayer, Brown, Rowe & Maw LLP v. IRS*, 537 F. Supp. 2d 128 (D.D.C. 2008) (Special Counsel to the IRS's personal notes on relevant background documents regarding aspects of a transaction he considered significant, as the agency debated how to best address certain transactions, exempt under deliberative process exemption); *Elec. Privacy Info. Ctr. v. DOJ*, 584 F. Supp. 2d 65, 75 (D.D.C. 2008) ("If OLC provides legal advice as part of a decision-making process, this legal advice is protected under the deliberative process privilege."); *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) ("Draft documents, by their very nature, are typically predecisional and deliberative"); *cf. Tax Analysts v. IRS*, 483 F. Supp. 2d 8, 17 (D.D.C. 2007) (documents that are "legal interpretations of . . . the Internal Revenue Code with respect to particular issues or provide the Office of Chief Counsel's legal conclusions . . . regarding the tax laws" do not fall within the deliberate process exemption) (internal quotation marks and citations omitted).

Documents ("Pl.'s Reply") at 8, ECF No. 17.  The IRS responds that the legal advice

within the draft Form 886A is "inextricably intertwined" with any non-deliberative

segments of the document, and courts have withheld documents similar to the legal

memorandum at issue here without engaging in a segregability analysis.  *See* Def.'s

Reply Br. in Supp. of Mot. for Summ. J. and Response Br. in Opp'n to Pl.'s Cross-Mot.

for Summ. J. ("Def.'s Response") at 8, ECF No. 15.  I agree.

It is well established that an agency claiming that a document is exempt under

FOIA must, after excising the exempted information, release any reasonably segregable

information unless the non-exempt information is inextricably intertwined with the

exempt information.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d

1022, 1026-27 (D.C. Cir. 1999).  A "blanket declaration" that materials do not contain

segregable information is insufficient.  *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F.

Supp. 2d 1, 19 (D.D.C. 2004).  Rather, an "agency must provide a detailed justification

for its non-segregability" to demonstrate that "all reasonably segregable material has

been released." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir.

2002) (internal quotation marks and citation omitted).

Here, the IRS's supporting declarations provide sufficient descriptions of the

contents of the withheld documents, as well as the specific pages affected by each

exemption claim, and make clear that all withheld documents were reviewed line-by-line

to identify reasonably segregable material.  For instance, the justification for the IRS's

partial withholding of 4 documents under the deliberative process privilege goes through

the record page-by-page, stating:

13

> Withheld portions of pages 03, 164, 253 and 257 record conversations between elements of the [IRS] regarding possible action regarding [p]laintiff. The withheld portions of page 03 are a summary of Counsel advice regarding classification of [p]laintiff and a brief description of the [IRS]'s deliberations of possible action regarding [p]laintiff. Page 164 is a short memorandum discussing the status of the case, and the withheld portion summarizes discussions with Counsel regarding how to proceed regarding [p]laintiff. Pages 253 and 257 are pages from the [IRS] Agent's case notes. The withheld portions of page 253 summarize communications between [IRS] employees regarding [p]laintiff, and the withheld portion of page 257 summarizes communications between the [IRS] Agent and Counsel regarding [p]laintiff's case.

King Decl. ¶ 14(c).

In the absence of contrary evidence or specific cites to potentially unsegregated portions, the declarations are afforded the presumption of good faith. *See SafeCard Servs.*, 926 F.2d at 1200. This showing is thus sufficient to allow the Court to determine that no portion of the fully-withheld documents could be segregated and subsequently released. *See Johnson*, 310 F.3d at 776 (in demonstrating that all reasonably segregable material has been released, "the agency is not required to provide so much detail that the exempt material would be effectively disclosed"); *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (where the government affidavits show with "reasonable specificity" why documents cannot be further segregated, district court did not abuse its discretion by refusing to conduct *in camera* review); *Weissman v. CIA*, 565 F.2d 692, 697-98 (D.C. Cir. 1977) ("It is only where the record is vague or the agency claims too sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matters.").

## 2. Attorney-Client Privilege

Because all of the information withheld pursuant to the attorney-client privilege was also withheld pursuant to the deliberative process privilege, I do not need to consider the propriety of the defendant's application of the attorney-client privilege.

### C. FOIA Exemptions 3 and 7(D)

Withholding 11 pages (pages 267 to 277), in full, under Exemptions 3 and 7(D), the IRS argues that these materials are exempt "because their disclosure could reasonably be expected to disclose the identity of a confidential source or sources" as well as "seriously impair federal tax administration."  King Decl. ¶ 17.  Plaintiff contends that the IRS's declarations are too generalized to provide the plaintiff, or this court, with adequate information to evaluate the IRS's decision to withhold the documents, and that summary judgment is inappropriate until *in camera* review of the withheld documents is performed.  Pl.'s Mem. at 12-13, 16-17.

As previously explained, Exemption 3 of FOIA incorporates nondisclosure protections established in other federal statutes, *see generally* 5 U.S.C. § 552(b)(3), and it is well-established that 26 U.S.C. § 6103 provides particular criteria for withholding information.  Accordingly, § 6103(e)(7) states that "[r]eturn information with respect to any taxpayer may be open to inspection by or disclosure to any [authorized] person" if it is determined that "such disclosure would not seriously impair [f]ederal tax administration."  Although phrased as a permissive statute, rather than a prohibitive one, the IRS argues that § 6103(e)(7) can be interpreted to ban the disclosure of return information that would seriously impair federal tax administration.  Def.'s Mem. at 19.

Exemption 7(D) protects from disclosure "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D).   "A source is confidential within the meaning of [E]xemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks and citation omitted). The court may consider a number of factors in determining whether a source's communication should be treated as confidential, "including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998).   Of all of FOIA's law enforcement exemptions, it is well known that Exemption 7(D) affords the most comprehensive protection. *See Billington v. U.S. Dep't of Justice*, 301 F. Supp. 2d 15, 22 (D.D.C. 2004); *Voinche v. FBI*, 940 F. Supp. 323, 331 (D.D.C. 1996).

The IRS submitted *in camera* declarations to support its withholding of this group of 11 pages due to "the nature of the documents withheld" as well as the "nature of [its] assertions" under FOIA Exemptions 3 and 7(D). *See* Def.'s Response at 12. The *in camera* declarations provide additional details explaining why the IRS has not described any investigation or informant information in any greater detail in its public submissions. *See* Def.'s *In Camera* Sub. Although the Court is mindful that *in camera* declarations are

to be avoided unless essential, *see, e.g.*, *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976), where, as here, "an agency indicates that no additional information concerning an investigation may be publicly disclosed without revealing precisely the information that the agency seeks to withhold, the receipt of *in camera* declarations is appropriate." *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 16 (D.D.C. 2009); *see also Arieff v. U.S. Dep't of the Navy*, 712 F.2d 1462, 1469 (D.C. Cir. 1983) (stating that *in camera* affidavits are, "when necessary, part of a trial judge's procedural arsenal") (internal quotation marks omitted).

After reviewing the IRS's *in camera* declarations, the Court finds that the agency has properly invoked Exemptions 3 and 7(D) with respect to pages 267 to 277. First, the Court is satisfied that, on the basis of detailed *in camera* declarations, disclosure of these materials would impair the collection, assessment, or enforcement of the tax laws under Exemption 3. Indeed, an individual who has delegated authority to make such a determination under 26 U.S.C. § 6103(e)(7) attests via *in camera* declaration that releasing the particular pages at issue would seriously impair federal tax administration. *See* Def.'s *In Camera* Sub.

Second, the *in camera* declarations contain ample descriptions of the 11 pages withheld by the IRS, and explain why each of the pages cannot be further considered on the public record without revealing material that the IRS seeks to withhold from public disclosure. *Id.* Sufficient for Exemption 7(D) purposes, the detailed *in camera* submissions from the IRS confirm that the withheld documents are part of an investigatory record compiled for law enforcement purposes, that sources supplied the

information under circumstances which indicate assurances of confidentiality, and that

disclosure of any portion of the document would reveal the identity of confidential

sources. *Id.* In other words, the court is satisfied that the sources provided information

under at least an implied promise of confidentiality, and that disclosure of this

information via the release of these 11 pages, which contains identifying information

throughout, could reasonably be expected to disclose their identities. *See Billington*, 301

F. Supp. 2d at 22 (based on *in camera* declarations, concluding that the government

properly withheld a six-page memorandum that implicated a government informant under

Exemption 7(D)). Accordingly, I find that the information contained within pages 267 to

277 is exempt from disclosure under Exemptions 3 and 7(D).

### D. Plaintiff's request for *in camera* inspection

Plaintiff has requested *in camera* review of documents withheld pursuant to

Exemption 5 and Exemption 3, in conjunction with 26 U.S.C. §§ 6103(a) and (e)(7).

District courts need not and should not make *in camera* inspections, however, where the

government has sustained its burden of proof on the claimed FOIA exemption. *See, e.g.*,

*ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011) (when an agency's

declarations "provide specific information sufficient to place the documents within the

exemption category, and if there is no evidence in the record of agency bad faith, then

summary judgment is appropriate without *in camera* review") (internal quotation marks

and citations omitted); *Weissman*, 565 F.2d at 697 ("In every FOIA case, there exists the

possibility that [g]overnment affidavits claiming exemptions will be untruthful. . . . If, as

appellant argues, [this] possibilit[y] [is] enough automatically to trigger an *in camera*

investigation, one will be required in every FOIA case.  This is clearly not what [C]ongress intended, nor what this Court has found to be necessary.").

For the reasons discussed above, the IRS has met its burden to prove that the withheld documents are totally exempt.  Therefore, this Court has an adequate factual basis to make its determination and need not examine the disputed documents in order to determine their exempt status.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS the defendant's Motion for Summary Judgment [Dkt. #11] and DENIES plaintiff's Cross-Motion for Summary Judgment [Dkt. #14].  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge